Filed 1/8/15  P. v. Munguia CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B254980 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA121887) |
| v. | |
| MATTHEW MARTIN MUNGUIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Pat Connolly, Judge.  Affirmed.

Jonathan B. Steiner and Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle and John Yang, Deputy Attorneys General for Plaintiff and Respondent.

Appellant Matthew Martin Munguia pled no contest to one count of corporal injury to a spouse, cohabitant or child's parent in violation of Penal Code[1] section 273.5, subdivision (a). On March 29, 2012, appellant was placed on formal probation for five years on the conditions, inter alia, that he complete 52 weeks of domestic violence classes and seek training, schooling or employment as approved by the probation officer.

On October 9, 2012, appellant admitted he had violated his probation by failing to appear in court to verify his attendance of the required domestic violence classes. Probation was reinstated on the condition that appellant perform 30 days of work for the California Department of Transportation ("CALTRANS"), to be completed by November 7, 2013. On March 6, 2013 and July 22, 2013, appellant again admitted to violating probation. On both occasions, probation was reinstated.

On March 6, 2014, after a bench trial, appellant was found to be in violation of probation. Probation was revoked and terminated, and appellant was sentenced to the upper term of four years in state prison.

Appellant appeals, contending the trial court abused its discretion in terminating probation and sending him to state prison. He further contends that if probation was properly terminated, the section 1203.097 fine imposed when probation was initially granted must be stricken. We affirm the judgment.

Facts

a. Underlying offense

According to testimony at the preliminary hearing, appellant got into an argument with Darlene Baca, who is the mother of his children. The investigating officer testified that Baca stated that appellant punched her five times in the face. She put her hand up to her face, and the middle finger of her hand was injured.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

b.  March 6, 2014, probation revocation hearing

Los Angeles County Deputy Probation Officer Danielle Hines supervised appellant during his probation.  According to Officer Hines, appellant did not perform his probation conditions satisfactorily.  Appellant failed to submit proof of progress on his CALTRANS service ordered by the court as a condition of probation reinstatement on July 22, 2013.  This proof was due October 21, 2013.  The minute order for October 21, 2013 shows that appellant did not provide any CALTRANS documentation by that date.  He was ordered to show completion of the CALTRANS service by January 22, 2014.  Appellant also failed to comply with that condition.

Officer Hines opined that appellant's performance on the domestic violence education condition was satisfactory.  Appellant had not missed any classes since probation had been reinstated.  Overall, appellant had completed 28 of the required 52 classes of the domestic violence course.

Darlene Baca testified as a witness for appellant.  She stated that at the time of his arrest for the current probation violation, appellant was working to help support the household, and was also watching the children while she worked the night shift.  Appellant missed his CALTRANS duties because he had to care for the children until Baca got home from the night shift.  Sometimes, Baca did not go to work so that appellant could perform his CALTRANS duties.

Discussion

1.  Termination of probation

Appellant contends the trial court abused its discretion in terminating probation because he was providing support to Baca and his children, was taking the required domestic violence classes, had done 140 of the 240 required CALTRANS hours and had not committed any new crimes.  He also contends that his noncompliance with the CALTRANS service requirements was not willful, but occurred because the service would have interfered with his job.  We do not agree.

3

The court explained its decision to terminate probation, stating: "Quite candidly, Mr. Munguia has more than had enough opportunities. I don't buy for one second, seeing what I see here, that he's done anything. [¶] This is what happens. Back on October 9th of 2012, I told him that he had to do 30 days of CALTRANS, due November 7, 2013. As of that date he had not even done one day. As a matter of fact, he hadn't even enrolled. Okay. So at that point in time I said any violation and he was going to state prison. [¶] And this same attorney – I won't use the word begged, but asked this court – and even though Mr. Munguia wasn't doing what he was told to with domestic violence, wasn't even showing up to court when he was supposed to, I gave him another opportunity, and instead of putting him in state prison, I hung four years over his head and told him you will get no chances, whatsoever. [¶] And even then – and I feel bad about this – I allowed him to admit a violation, and gave him 17 plus 17 for 34 and still allowed him to remain out. [¶] At this point in time he's got his four years. He asked for that and he is going to receive it. He's found in violation. The court is imposing the four years that has been previously given him."

### a. General principles of law

The trial court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses." (§ 1203.2, subd. (a).)

Facts supporting a probation revocation need only be proven by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 439.) The evidence must support a conclusion that the probationer willfully violated the terms and conditions of probation. (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295.)

Once there has been a factual determination that probation has been violated, the court has discretion to revoke, modify or continue probation as originally set, depending

4

upon its analysis of the circumstances before. (*People v. Hawthorne* (1991) 226 Cal.App.3d 789, 792; § 1203.2, subd. (b)(1).) A trial court's decision is reviewed for an abuse of discretion. (*People v. Rodriguez, supra*, 51 Cal.3d at p. 443.) "'[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .'" (*Ibid.*)

### b. Violation

Appellant contends that he was ordered by the court to support his children and that the demands of providing this support prevented him from completing his CALTRANS requirement. He specifically points to his employment and his child care duties while Baca was at work as interfering with CALTRANS service. He concludes that his failure to comply with the CALTRANS service requirement was not willful, and so did not constitute a violation of his probation.

The evidence must support a conclusion that the probationer willfully violated the terms and conditions of probation. (*People v. Cervantes, supra,* 175 Cal.App.4th at p. 295.) Noncompliance is not willful when it is due to circumstances beyond the probationer's control. (*Ibid.*)

Appellant did not object to the CALTRANS service condition or claim it interfered with other court-ordered obligations such as supporting his children until the third (and final) probation revocation hearing, which was held more than a year after the service. He has thus waived this claim. (See *People v. Welch* (1993) 5 Cal.4th 228, 234-235 [failure to object to unreasonable probation conditions at the sentencing hearing waives such claims on appeal].) Further, as we discuss in more detail below, even if the claim were not waived, it would lack merit on the record before us.

### c. Termination

Appellant contends he had made "substantial progress" in completing the CALTRANS service requirement, had not committed any crimes while on probation, had "re-established" himself with the victim and his family, and had returned to productive

5

life, and so it was an abuse of discretion for the trial court to terminate his probation because he failed to "quickly" complete all the CALTRANS service work. We do not agree.

Appellant's efforts in the non-CALTRANS areas were commendable, but appellant was not free to pick and choose which probation conditions he fulfilled. Appellant had ample opportunity to fulfill the CALTRANS requirement, but did not do so.

The trial court initially gave appellant one year to complete 240 hours of service. On October 21, 2013, a few weeks before the original deadline of November 7, 2013, the court in effect extended the deadline by ordering appellant to provide proof of completion by January 22, 2014. Thus, the trial court gave appellant almost three additional months to comply, for a total time of 15 months. Appellant clearly was not being punished for failing to "quickly" comply.

Further, the record does not support appellant's claim that he did not fulfill the CALTRANS obligation because he was too busy fulfilling the other condition of supporting his family. While appellant did have periods of full-time employment, there is no dispute that he also had periods of unemployment and part-time employment. Although Baca testified that appellant watched the children while she was at work, her testimony showed that he nevertheless had opportunities to do CALTRANS service. Baca testified that she got "home at like 2:00 or 3:00 in the morning." When asked what time appellant went to work, she did not respond, but instead said that she "started another place and started working until 6:00 in the morning." Thus, there seems to have been a period of time when watching the children would not have conflicted with CALTRANS work. Baca also testified that "some days he couldn't go to his CALTRANS, because I had to work, so he would miss." This shows that some days he could go to his CALTRANS service.

The trial court did not act arbitrarily, capriciously or in a patently absurd manner. There is no basis to find an abuse of discretion. (See *People v. Catalan* (2014) 228 Cal.App.4th 173, 179; see also *People v. Downey* (2000) 82 Cal.App.4th 899, 910 [no

6

abuse of discretion in terminating probation where the court based "the decision not to again reinstate probation on appellant's demonstrated lack of commitment to carrying out the terms and conditions of his probationary grant and the need to protect appellant's and the public's safety"].)

2. Section 1203.097 fine

When the court initially placed appellant on probation in 2012, the court ordered appellant to pay $400 pursuant to section 1203.097. The trial court did not mention this payment when probation was revoked, but the fine appears on the abstract of judgment. Appellant contends the "fine" must be stricken because the court did not re-impose it at sentencing and since the payment is a condition of probation, it cannot be imposed in connection with a prison sentence. We do not agree.

Although appellant refers to the $400 as a "fine," it is not. At the time appellant was granted probation, section 1203.097, subdivision (a), required that certain terms be included in probation granted to anyone convicted of domestic violence. One of these terms was "[a] minimum payment by the defendant of four hundred dollars ($400)" to be disbursed to various domestic violence funds. (§ 1203.097, subd. (a)(5).) This payment became owing when probation was granted. It may be that as a practical matter, some probationers do not make immediate full payment of this amount, but that failure is not a reason to excuse them from paying the remainder of the payment owing when probation terminates.

Perhaps in response to arguments like appellant's, the Legislature amended section 1203.097 in 2013 to "clarify that the . . . payment is a fee, not a fine, and that the fee is not subject to reduction for time served." (Legis. Counsel's Dig., Assem. Bill No. 139 (2013-2014 Reg. Sess.).) The amendment also clarifies that the fee "may be collected by the collecting agency . . . after the termination of the period of probation, whether probation is terminated by revocation or by completion of the term." (§ 1203.097, subd. (a)(5)(E).)

7

The trial court had no authority to relieve appellant from payment obligation. The court appears to have overlooked the section 1203.097 payment at the March 2012, sentencing hearing, but subsequently remedied that omission on the abstract of judgment. There is no basis for us to undo the trial court's correction.

Disposition

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

GOODMAN, J.[*]

We concur:

MOSK, Acting P.J.

KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8